# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**United States of America**

                *Plaintiff*,

**v.**                                       **Case No. 3:18-cr-049**
                                                 **Judge Thomas M. Rose**

**Wayne L. Arrington, Jr.,**

                *Defendant*.

---

### ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS. (ECF 17, 22).

---

Pending before the Court is a motion to suppress filed by Defendant Wayne L. Arrington, Jr. ECF 17. The motion requests an order suppressing evidence seized from 49 Richmond Avenue in Dayton, Ohio and statements made on a jail telephone. After a hearing was conducted on August 10, 2018, Defendant filed a memorandum of law in support of his motion. ECF 22. Arrington contends that he was unlawfully arrested and questioned during the execution of a search warrant, and unconstitutionally monitored thereafter.

**Background**

On March 9, 2018, Detective Lucas Rose obtained a warrant to arrest Shane Lamar Foster and search the address of 49 Richmond Avenue in Dayton. (ECF 21, PageID 73). On March 14, 2018, officers executed that search warrant. (Id. at PageID 75). Based on surveillance conducted

immediately before executing the warrant, officers believed that there was an individual inside the residence. (Id. at PageID 76-77). In executing the search warrant, officers first knocked and announced themselves. (Id. at PageID 77). Defendant Wayne Arrington appeared in the front window and tore down the blinds to show his hands. (Id.). Law enforcement then entered the residence and ordered Arrington to the front porch. (Id. at PageID 78). Arrington was secured in handcuffs and detained. (Id. at PageID 78, 112). The police officers asked, for their own safety, whether anyone else was present in the residence, to which Arrington replied no, no one else was present. (Id. at PageID 78). Arrington further stated that he was the only person residing in the residence. (Id.).

While Arrington was secured and left with a security officer, the entry team proceeded through the rest of the residence to clear it. (Id. at PageID 79). No other individuals were located by law enforcement. (Id.). After the residence was secured, the entry team spoke with Detective Rose and briefed him on evidence that was in plain sight. (Id.). After being briefed, Detective Rose walked through the residence, taking an overall impression of each room. (Id.). Based on the drugs he observed in plain sight, Rose concluded the house was used for narcotic sales and manufacturing drugs. (Id.).

Next, Rose introduced himself to Arrington and asked for Arrington's identification. (Id. at PageID 80). During this interaction with Detective Rose and without solicitation, Arrington stated that he had fallen on some hard times; this was not like him; and he was trying to make some money. (Id. at PageID 80, 116). At this time Arrington was arrested and moved to the police cruiser. (Id. at PageID 80, 113, 119). Based on the drugs in plain sight, and in particular those in the immediate area to where Arrington had been sitting prior to the police entry, officers believed

there was probable cause to arrest Arrington. (Id. at PageID 113, 121-122).   Detective Rose read *Miranda* warnings to Arrington, who then said he did not wish to speak with law enforcement. (Id. at PageID 122-123).   After Arrington's arrest, law enforcement completed the search warrant. (Id. at PageID 80).   Arrington remained in the cruiser during the search warrant. (Id. at PageID 119).

During the search, officers found items they suspected were Fentanyl or heroin, gel capsules (filled and empty), baggies, blender and sifters used to mix/cut drugs, gloves, respirators, scales, multiple cell phones, United States currency, firearms, and a lease agreement for the residence of 49 Richmond Avenue in Arrington's name. (Id. at PageID 82-106).

Defendant argues that he was "merely present" in the home and that his proximity to others engaged in criminal activity does not rise to probable cause that he committed criminal activity. However, Arrington lived at the residence.   Upon being asked if anyone else was present, Arrington correctly advised law enforcement that he was the only person who lived there. (Id. at PageID 78).   During the search warrant, law enforcement located the lease for the residence in Arrington's name. (Id. at PageID 23-24).   Furthermore, law enforcement found mail addressed to Arrington at the 49 Richmond Avenue address. (Id. at PageID 102).

Law enforcement's observations of another individual at that residence on previous occasions does not diminish the fact that Arrington was the one who was present on that day in the residence surrounded by evidence of drug trafficking.   The evidence does not support Arrington's assertion that he was "merely present" at the time the search warrant was executed.

Furthermore, even if there were no evidence that Arrington was residing at the residence, he was the only person present at the residence in immediate proximity to drugs and drug trafficking and manufacturing items, most of which were in plain view.   This alone would be

sufficient probable cause to believe that Arrington was involved with drug trafficking and drug manufacturing.

After Arrington had been taken to the jail, law enforcement listened to the calls that were recorded through the jail. (Id. at PageID 104). Arrington was heard making references to weight equipment located inside the dining room. (Id.). Subsequent to hearing those calls, law enforcement obtained a subsequent search warrant for 49 Richmond Avenue. (Id. at PageID 105). During the search, law enforcement located money within an empty void of the weight equipment. (Id.). A copy of that search warrant was provided to the Court as Government's Exhibit 53. (Id. at PageID 106).

**Analysis**

Defendant Wayne L. Arrington seeks to suppress the statement that he was the only person who resided at the residence, alleging that it was made while he was detained. "[O]fficers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.'" *Muehler v. Mena*, 544 U.S. 93, 98, 125 S. Ct. 1465, 1469, 161 L. Ed. 2d 299 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)). The Supreme Court has previously noted that "[t]he governmental interests in not only detaining, but using handcuffs, are at their maximum when, as here, a warrant authorizes a search for weapons and a wanted gang member resides on the premises. In such inherently dangerous situations, the use of handcuffs minimizes the risk of harm to both officers and occupants." *Muehler v. Mena*, 544 U.S. 93, 100, 125 S. Ct. 1465, 1470–71, 161 L. Ed. 2d 299 (2005). The instant case does not involve a gang member, but drug distribution. The governmental interest is similarly high.

"For purposes of safety, law enforcement inquired if anyone else was physically present in the residence prior to commencing their search; Arrington responded "no," and then added that he was the only person who resided there. Arrington's statement regarding residence was not responsive to the question posed and was additional information that he volunteered. Arrington's statements about how he had fallen on hard times and did this for money was not in response to any question posed by law enforcement. Arrington volunteered that statement while officers were inquiring for identification.

The procedural safeguards set forth in *Miranda* are required to be given when an individual is in custody and is subjected to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682 (1980). "The term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. However, statements given voluntarily without any compulsion are not barred by the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602 (1966).

The only questions posed to Arrington before being Mirandized were whether there was anyone else present at the home before law enforcement began their search and about Arrington's identification. Neither of the questions posed would have prompted the responses given by Arrington. Furthermore, Arrington made no statements directly to law enforcement regarding the items inside the residence as he declined to speak with law enforcement after being Mirandized.

Based on the drugs laying in plain sight throughout the residence, Detective Rose had reason to arrest Arrington. (Id. at 121- 122). Even if the Court were to determine that there was

no probable cause to arrest Arrington after the protective sweep of the house and the initial walk-through by Detective Rose, there was clear evidence of drug trafficking and drug manufacturing activity found during the complete search. Additionally, Arrington's lease in his name for that residence was found during the search. Thus, prior to Arrington being transported to the jail, law enforcement officers had probable cause for Arrington's arrest.

Arrington also seeks to suppress statements he made during a recorded telephone call from the jail as well as the evidence derived from the subsequent search warrant. Those statements were not made as part of any law enforcement interrogation but were made during a recorded call Arrington had with a private citizen. Prior to Arrington being transported to the jail, there was probable cause to arrest him for drug activity. Thus, any statements he made at the jail on a recorded line are not subject to suppression. The Court further notes law enforcement properly sought a search warrant after learning of the statements on the jail calls. The resulting search warrant and seizure of additional money will not be suppressed.

**Conclusion**

Because probable cause for an arrest was provided by evidence in plain sight, and because no un-Mirandized statements were elicited and because the jail telephone statements were not elicited, Defendant's Motion to Suppress, ECF 17, 22, is **DENIED.**

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, November 7, 2018.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE